**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-09-865 |
| | § | (C.A. No. C-12-125) |
| OSCAR PENA, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE AND
DENYING A CERTIFICATE OF APPEALABILITY**

Pending before the Court are Oscar Pena's (Pena) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, his Affidavit, and Memorandum in Support. D.E. 48, 49, 50.[1] Also before the Court are the Affidavits of defense counsel and the AUSA, along with the government's response. D.E. 55, 57, 58. Pena filed a late reply which was received on December 3, 2012. D.E. 62.[2] For the reasons set forth in this Order, the Court

---

[1] Docket entries refer to the criminal case.

[2] The United States' Response included a certificate of service stating that Pena was mailed a copy of the government's response on July 18, 2012. D.E. 58 at p. 23. On October 9, 2012, the Clerk received a letter from Pena in which he stated he had not received any documents from the Court or the government. D.E. 60. The government mailed another copy of its response to Pena on October 12, 2012, by certified mail, return receipt requested, as evidenced by the government's certificate of service filed October 11, 2012. D.E. 61. On November 2, 2012, the Clerk sent Pena a copy of the Docket Sheet. Pena's reply was due 30 days after the government filed its response. In this case, because Pena did not initially receive the response, it was due thirty days after the response was mailed to him a second time, or on or

1

dismisses Pena's motion to vacate with prejudice. Additionally, the Court denies him a Certificate of Appealability.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pena was arrested on September 15, 2009, near Orange Grove, Texas, after the Border Patrol was notified by the Orange Grove Police Department that Pena and six others had been detained because six were believed to be undocumented aliens. D.E. 1. All were traveling on Highway 359 in an F-250 with its front license plate obstructed. The truck was stopped for that reason and a citation was issued to Pena, the driver. Id. The Border Patrol agents determined that although Pena was a United States citizen, none of the others could produce any documentation to support their legal presence in the U.S. They admitted illegally wading across the Rio Grande River to cross into the United States. Id. Pena was arrested for a violation of 8 U.S.C. § 1324, Transporting Unlawful Aliens.

Pena made his initial appearance in federal court the day after his arrest and was appointed counsel.  D.E. 3, 8, 10. He was indicted on two counts of violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii). Pena was arraigned on October 21, 2009. On December 1, 2009, Pena entered into a plea agreement with the government. In exchange for Pena's guilty plea to Count One and his waiver of his right to appeal or file a § 2255 motion

---

before November 12, 2012. The envelope in which Pena mailed his response is postmarked November 30, 2012. The document itself states it was mailed on November 7, 2012.

2

to vacate, the government promised Pena that it would recommend a two level credit for acceptance of responsibility and recommend a sentence within the applicable guideline range. D.E. 23 at ¶¶ 1, 2, 7. Pena was rearraigned the same day. Minute Entry December 1, 2009, D.E. 38.

At rearraignment, Pena testified that his attorney read the indictment to him, discussed it with him, and that Pena understood the indictment and possible punishment. D.E. 38 at 3, 5.[3] He testified that he had met with his attorney four or five times before rearraignment, that he had enough time to discuss his case with his attorney, and that he was satisfied with counsel's services. Id. at 5-6. The Court advised Pena of his trial rights, Pena waived them and waived his right to remain silent. Id. at 6-8. The Court reviewed the indictment, the maximum punishment,[4] and Pena stated that he understood. Id. at 8-10. Pena further

---

[3]
4 THE COURT: And have you discussed the indictment
5 with your attorney, Mr. Pena?
6 THE DEFENDANT: Yes, sir.
7 * * * * *
8 THE COURT: And do you understand the indictment and
9 the possible punishments for being found guilty? Mr. Pena?
10 THE DEFENDANT: Yes, sir.

Id. at 5.

[4]
19 THE COURT: The maximum possible punishment is a
20 period of five years in the penitentiary. There is a maximum
21 $250,000 fine, a mandatory $100 special assessment. There's a
22 supervised release term that must be imposed. A period of
23 supervision of your behavior will begin when you are released
24 from custody. That period of supervision must be at least two
25 years. It can last as long as three. And if you violate the
1 terms and conditions of your supervision, you can be returned
2 to the penitentiary to serve a sentence of up to two years. Do
3 you understand?
4 * * * * *

3

acknowledged that he had discussed the guidelines and how his sentence would be calculated with his counsel. Id. at 10. Pena denied that he was promised leniency if he plead guilty, denied he was forced or threatened to plead guilty, and denied that he had been promised a specific sentence. Id. at 10-11, 12 ("THE COURT: Has anybody promised you what your sentence would be, Mr. Pena? THE DEFENDANT: No, sir."). Pena testified that his attorney read the plea agreement to him, they discussed it and he understood it.[5] Id. at 11. The Court questioned Pena regarding his waivers of the right to appeal or to file a §2255 motion.[6] Pena

---

    5 THE COURT: Mr. Pena?
    6 THE DEFENDANT: Yes.
Id. at 9-10.

[5]16 THE COURT: Now, Mr. Pena, I believe you are looking
17 at a document that is known as a plea bargain agreement. Did
18 you read that document with your attorney? Did he read it to
19 you in English?
20 THE DEFENDANT: My attorney read it for me, yes, sir.
21 THE COURT: And do you understand it?
22 THE DEFENDANT: Yes, sir.
23 THE COURT: Did you discuss it with him?
24 THE DEFENDANT: Yes, sir.
25 THE COURT: Did you sign it?
1 THE DEFENDANT: Yes, sir.
Id. at 11.

[6]23 THE COURT: Mr. Pena, I see also at Page 3 that you
24 are giving up your right to appeal any sentence or your
25 conviction by this Court unless I sentence you above five
1 years, or unless I depart upward from the guidelines, when the
2 United States has not asked me to do so. You understand you're
3 giving up the right of appeal?
4 THE DEFENDANT: Yes, sir.
5 THE COURT: Do you want to give up the right of
6 appeal?
7 THE DEFENDANT: Yes, sir.
8 THE COURT: Did you talk to your lawyer about whether
9 or not you should give up those rights?

testified that he had discussed the waivers with his attorney and he wanted to waive those rights. Id. at 12-13. Pena pled guilty and agreed with the factual recitation by the government. Id. at 14-16. Pena testified that he was transporting a specified alien and he knew that his passenger was in the country illegally.[7] Id. at 16. The Court ordered preparation of a Presentence Investigation Report (PSR). D.E. 24.

The Probation Department prepared the PSR. Probation calculated Pena's base level offense at 12 pursuant to U.S.S.G. § 2L1.1(a)(3). D.E. 26 at ¶ 16. The base level was enhanced by three because Pena transported six aliens. Id. at ¶ 17. The offense was enhanced by an additional two points because one of the aliens was an unaccompanied minor and due

---

    10 THE DEFENDANT: Yes, sir.
    11 THE COURT: And you're also giving up your right to
    12 file a petition under Section 2255 of Title 28, which
    13 authorizes Defendants to file petitions to vacate or modify or
    14 contest their conviction or sentence after they become final.
    15 But you're giving up that right as well.
    16 THE DEFENDANT: Yes, sir.
    17 THE COURT: Do you want to give up those rights?
    18 THE DEFENDANT: Yes, sir.
    19 THE COURT: And did you discuss with Mr. Libby
    20 whether or not you should give up those rights?
    21 THE DEFENDANT: Yes, sir.
Id. at 12-13.

    [7]14 THE COURT: Did you transport Arnulfo Melendez on
    15 September 15th, 2009?
    16 THE DEFENDANT: Yes, sir.
    17 THE COURT: When you did, was he an alien illegally
    18 within the United States?
    19 THE DEFENDANT: Yes, sir.
    20 THE COURT: Did you know that he was?
    21 THE DEFENDANT: Yes, sir.
Id. at 16.

to Pena's endangerment of the aliens by creating a substantial risk of death or serious bodily injury. Id. at ¶¶ 18, 19. After credit for acceptance of responsibility, Pena's offense level was 17. Id. at ¶ 27.

Pena's criminal history included convictions for Burglary of a Habitation, Voluntary Manslaughter, Murder, and Aggravated Assault, but his criminal history points totaled only 3 because three of the offenses were not scored. His criminal history category was II. Id. at ¶¶ 29-33. The guideline sentencing range was 27-33 months with a statutory maximum sentence of 5 years. Id. at ¶¶ 57, 58.

Pena objected to the two point enhancement for endangerment at sentencing. D.E. 28. Pena testified that he had the PSR and his attorney read it to him and they discussed it. D.E. 39 at 2. There was one objection, but no corrections. Id. at 2-3. The Court rejected the enhancement for endangerment. The Court considered Pena's violent behavior and the fact that two of the assaultive offenses occurred while Pena was in prison. The Court sentenced Pena to the maximum statutory sentence,

> 24 THE COURT: I'm going to sentence the Defendant above
> 25 the guidelines as calculated. I'm going to depart upwards,
> 1 because I believe that this Defendant's criminal history is
> 2 underscored. There are too many indications of violence and
> 3 lawlessness within this Defendant's history to ignore.
> 4 The 20-year sentence in 1982 resulted in 25 years of
> 5 supervision, because the Defendant was not discharged from
> 6 parole until August of 2008. And thereafter, within 13 months,
> 7 the Defendant was arrested for a federal felony involving human
> 8 trafficking.
> 9 To score as proposed by a strict reading of the
> 10 guidelines ignores Paragraph 79, ignores 84, ignores 85,
> 11 ignores the Defendant's membership in the prison gang, and

6

12 ignores statements in the Presentence Investigation made about
13 the Defendant by his own brother being present at the scene of
14 a murder.
15 What this PSI truly predicts and offers is a picture
16 of a Defendant who, from the time he was 18 years old,
17 committed a burglary of a habitation and has not slowed down in
18 his willingness to commit crime. He presents the picture of
19 someone who has not been able to abide by the law, either by
20 statutory law or conditions of supervision. And as a result of
21 his inability to abide by statutory law and respect for human
22 life, his supervision was extended until the year 2008. But
23 13 months after that, he was right back here.
24 I think the matter of the murder at Paragraph 31 is
25 especially significant. It is a murder that occurred while in
1 the penitentiary, which means that even those persons around
2 him in custody are not safe. It also means that he has no
3 problem with taking human life, or did then, within two years
4 after the commission of the very offense that he was serving.
5 I'm not willing to risk the safety of the public on
6 this Defendant. I don't know why the Defendant, Criminal
7 History Category VI, 41 to 51 months, is an appropriate
8 sentence. The maximum possible punishment for this offense is
9 a period of five years in the penitentiary. And that's this
10 Defendant's sentence.
11 I think it's underscored at Criminal History
12 Category VI. I think the sentencing factors at Title 18,
13 Section 3553, tell us that we are to look at the Defendant.
14 The guidelines may give the advice of how to calculate a
15 sentence, but the guidelines can't tell the Judge to ignore
16 another murder that was committed in 1984, or an aggravated
17 assault that was committed a year later, or a history of parole
18 revocations that occurred throughout this man's history. All
19 that began with a burglary of a habitation.
20 Therefore, the Defendant's sentence of five years, in
21 my judgment, is appropriate. And it is needed to impose a
22 sentence that is sufficient and not greater than necessary to
23 impose appropriate punishment, which includes protection of the
24 public.

D.E. 38 at 31-32. The Court advised Pena of his right to appeal the upward departure by the

Court within 14 days. Id. at 35.

Pena appealed and the Fifth Circuit affirmed his conviction and sentence. D.E. 45. Pena timely filed his motion to vacate, set aside or correct sentence. D.E. 48.

### III.  MOVANT'S ALLEGATIONS

Pena claims that his counsel was ineffective on the ground that counsel allegedly promised him a 15 month sentence, but he was sentenced to 60 months. D.E. 48 at p. 4. He also claims that counsel's ineffectiveness rendered his guilty plea unknowing and involuntary. Id. at p. 5.

The government urges the Court to dismiss Pena's motion pursuant to his waiver of the right to file a § 2255 motion. D.E. 58 at 13.

Pena's reply claims the waiver is irrelevant in light of his counsel's alleged promise of a 15 month sentence, which induced him to plead guilty. D.E. 62.

### IV.  ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in

8

a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.     Pena Waived His Right to File a Motion to Vacate**

Pena waived his right to file a motion to vacate by his plea agreement. D.E. 23 at ¶ 7. Pena's claim of ineffective assistance of counsel does not automatically relieve him of his waivers of appeal and § 2255 post-conviction proceedings. See United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"). In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted).

As a preliminary matter, this Court must decide whether Pena's claim that counsel promised him a 15 month sentence relieves Pena of his waivers. Pena does not claim that he did not understand the waivers, but rather that the entire plea should be vacated and he be returned to the position he was in before he pled guilty. Unless Pena can establish that his plea was involuntary, this Court will enforce his waiver of the right to file his motion to vacate and will not consider his claims on their merits.

**C.     Involuntary Plea**

   1. *Standard for evaluating a challenged guilty plea*

A "'plea of guilty entered by one fully aware of the direct consequences" must stand "unless induced by threats," misrepresentation, or "by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v. United States, 246 F.2d 571, 572 n.2. (1957) (en banc), rev'd other grds, 356 U.S. 26 (1958)). A criminal defendant's "reliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary." United States v. Lucia, 991 F.2d 179, 180 (5th Cir. 1993) (citing United States v. Jones, 905 F.2d 867 (5th Cir. 1990)). "As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences." Jones, 905 F.2d at 868 (internal citations omitted).

As a safeguard to ensure that guilty pleas are knowing and voluntary, federal courts are required to question a defendant on the core issues of knowledge of the consequences of his plea and the voluntariness of the plea. Fed. R. Crim. P. 11(b). Courts give great weight to a defendant's statements during the plea colloquy. Blackledge v. Allison, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002); see also United States v. Abreo, 30 F.3d 29, 31 (5th Cir.1994) (placing great weight on defendant's statements during plea); United States v. Maldonado-Rodriguez, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

2. *Pena was properly admonished before his plea was accepted*

Pena was questioned during re-arraignment on the voluntariness of his plea and his understanding of its consequences as required by Rule 11(b) of the Federal Rules of Criminal Procedure. See Part II, infra. at pp. 2-4. The Court reviewed the plea agreement with Pena, who testified that he understood it, had discussed it, and wished to waive his right to appeal or to file a § 2255 motion. Id. at note 5. The plea agreement language, which Pena swore had been read to him, stated in part:

> The defendant is aware that the sentence will be determined with reference to the United States Sentencing Commission's *Guidelines Manual* (U.S.S.G.). Defendant acknowledges and agrees that the Court may impose any sentence up to and including the statutory maximum, and that the sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a)(1) and (2) and § 3661. If the Court should impose any sentence up to the maximum established by statute, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

D.E. 23 at ¶ 6 (emphasis in original). The plea agreement also stated,

> In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The defendant understands that the sentencing range is advisory only, therefore the Court may impose a sentence that is lower or higher than that range. The United States does not make any promise or representation concerning what sentence the defendant will receive.

Id. at § 8.

"Prior to Mr. Pena's pleading guilty, I reviewed and explained with him every paragraph in the written plea agreement. Part of this discussion included my explanation that no one could promise Mr. Pena what sentence the Court would impose and that my prediction of the sentencing guideline range was a prediction not a promise." Id. at ¶ 6. "I never promised Mr. Pena that he would receive a 15 month sentence or any other sentence." Id. at ¶ 7. Counsel acknowledges that he may not have anticipated the 2 point enhancement for transportation of a minor. Had Pena not received that enhancement, Pena's guideline range would have been 15-21 months. Id. at ¶¶ 9-10.

Pena claims that AUSA Watt heard counsel promise Pena a 15 month sentence. D.E. 49 at ¶ 3. Watt's Affidavit denies that he heard counsel promise a specific sentence and denies hearing any part of their conversations. D.E. 57 at ¶¶ 4, 6.

Pena's claim that his attorney promised him a 15 month sentence contradicts his testimony at rearraignment that he had not been promised a specific sentence. D.E. 37 at 12, see Part II at p. 5. It also contradicts the language of his plea agreement, his counsel's Affidavit (D.E. 55), and the Affidavit of AUSA Watt (D.E. 49). "A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002), overruled on other grounds, Glover v. United States, 531 U.S. 198, 203 (2001). Under the circumstances, even if Pena's counsel estimated his expected sentence without including the enhancement, Pena

has not shown that his plea was unknowing or involuntary.

Pena's plea was voluntary. His plea agreement is enforceable, including Pena's waiver of his right to bring this motion to vacate. Accordingly, the Court does not reach the merits of Pena's claim, which must be dismissed.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Pena has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Pena is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Pena's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 48) is DISMISSED with prejudice to refiling. He is also denied a Certificate of Appealability.

It is so ORDERED on the 4th day of January 2013.

*Hayden Head*
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE